IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:
SHARON RANDOLPH, et al.
:
   v. : Civil Action No. DKC 2009-1790
:
ADT SECURITY SERVICES, INC.
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss (Paper 9) filed by Defendant ADT Security Services, Inc. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss will be denied.

**I. Background**

Plaintiffs Sharon Randolph and Tami Thompson were employed by Defendant ADT Security Services, Inc. ("ADT") from December 1, 2008 until April 2009. (Paper 12 ¶ 9, 38). Plaintiffs are both Maryland residents. (*Id.* at ¶ 5-6). Defendant is a Delaware corporation that does business in Maryland. (*Id.* at ¶ 7).

Plaintiffs were hired by Defendant to be residential resales representatives. (*Id.* at ¶ 9). Plaintiffs allege that their compensation as employees of ADT was "governed by the L3

pay plan, which provided Plaintiffs with set wages during the initial training period and then converted to a 100 percent commission plan." (*Id.* at ¶ 11). Plaintiffs assert that they complained to ADT's management regarding their compensation when they received their first paycheck because they believed their compensation was inadequate. (*Id.* at ¶ 19). Plaintiffs' manager was Chancey Manwiller ("Manwiller"), the resale manager. Plaintiffs allege that they complained about their compensation to Cherise Young and Rick Terry, ADT fill-in managers, because Manwiller was on maternity leave. (*Id.* at ¶ 31). When Manwiller returned from leave, Manwiller told Plaintiffs that it was too late for them to get back any bonuses or "kickers" that were not paid to them, but that Manwiller would correct any missing commissions. (*Id.* at ¶ 22). Plaintiffs contend that they were never compensated for the missing commissions. (*Id.*).

Plaintiffs allege that Manwiller told them not to complain about their compensation. Specifically, Plaintiffs maintain that Manwiller told Plaintiff Thompson to stop complaining or "she might get in trouble." (*Id.* at ¶ 24). Manwiller told both Plaintiffs, "It is too late to get the bonus or money that we owe you." (*Id.* at ¶ 25).

Plaintiffs complained to the Maryland Department of Labor, Licensing and Regulation ("DLLR") that ADT was refusing to pay

2

Plaintiffs compensation that Plaintiffs believed was owed to them, including overtime compensation Plaintiffs believed they were due because they worked more than forty hours per week. Plaintiffs provided DLLR with "proof of their hours and work performed and other information and documentation necessary to demonstrate that they were not being fully and properly compensated by ADT." (*Id.* at ¶ 27). DLLR sent a letter to ADT on or about April 2, 2009, notifying ADT that Plaintiffs had filed claims for unpaid compensation and that DLLR had initiated an investigation. (*Id.* at ¶ 29).

On or about April 3, 2009, Plaintiff Thompson received a call from Manwiller and Teresa Meyers ("Meyers"), an ADT human resources representative. Manwiller asked Thompson if she had filed a complaint with DLLR and asked if Thompson had sent privileged information to DLLR. Thompson told Manwiller that she had not sent privileged information to DLLR, but Plaintiffs allege that Manwiller "declared" that Thompson had done so. (*Id.* at ¶ 31-34). Plaintiffs allege that Meyers permanently suspended Thompson at this point in the conversation and told Thompson not to speak with any ADT employees or clients. (*Id.* at ¶ 35). After their phone call with Thompson, Manwiller and Meyers contacted Randolph and also suspended her. (*Id.* at ¶ 35). Soon thereafter, the DLLR investigator assigned to

3

Plaintiffs' case informed them that "their claim had merit and that they should pursue it privately." (*Id.* at ¶ 37).

Plaintiffs received termination letters from Defendant that were dated April 10, 2009. (*Id.* at ¶ 38). The letters stated that Plaintiffs were terminated because they "violated company policy that includes confidentiality agreements that are in [Defendant's] compensation plans for sales representatives, disclosing customers' personal data, and company confidential information to a third party." (*Id.* at ¶ 39).

On July 21, 2009, Plaintiffs filed a two-count complaint. (Paper 1). Defendant filed a motion to dismiss on September 3, 2009. (Paper 9). Plaintiffs filed an amended complaint on September 11, 2009. (Paper 12). Count I of Plaintiffs' amended complaint asserts that Defendant violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, by discharging Plaintiffs because Plaintiffs filed a complaint with DLLR. (*Id.* at ¶ 40-46). "Count III"[1] of the Amended Complaint asserts that Defendant wrongfully terminated Plaintiffs' employment under the Maryland public policy exception to at-will employment. (*Id.* at ¶ 47-53). Plaintiffs ask for injunctive and declaratory relief, damages to be determined at trial,

---

[1] There are only two counts in the amended complaint, but the second count is labeled as "count III."

4

prejudgment interest, "employment, reinstatement, promotion, front pay, or other equitable relief," attorney's fees, and costs. (*Id.* at 8-9). Defendant requested that the court consider its motion as moving to dismiss Plaintiffs' amended complaint. (Paper 14).

## II. Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

**1. Fair Labor Standards Act**

Defendant asserts that Plaintiffs have not stated a claim for retaliatory discharge under the FLSA because Plaintiffs have not alleged that they engaged in a "protected activity" or filed an eligible "complaint" under § 215(a)(3) of the FLSA. (Paper 9, at 3-5). Defendant argues that § 215(a)(3) only covers activity "under or related to this chapter," and that the United States Court of Appeals for the Fourth Circuit has narrowly interpreted the scope of what constitutes a "complaint." Defendant contends that Plaintiffs' action of filing a complaint with DLLR did not constitute a "complaint" under § 215(a)(3). Additionally, Defendant argues that Plaintiffs were excluded from coverage under § 215(a)(3) because, as commission-based employees, they were excluded from the Maryland Wage and Hour Law's coverage and so were not eligible to file a "complaint."

Plaintiffs contend that in order to state a claim under § 215(a)(3) of the FLSA, Plaintiffs must allege that they had a reasonable, good faith belief that they were asserting rights that were protected under the FLSA and that Defendant was aware that they were doing so. (Paper 13, at 8). Plaintiffs assert that their count I should survive Defendant's motion to dismiss

7

because they have alleged that they "held a reasonable, good faith belief that they had been misclassified as commissions based employees and that they had been inadequately compensated for overtime work performed for the Defendant." (*Id.*).

Enacted primarily to protect employees in the workplace, the FLSA imposes basic labor standards on covered employers such as Defendant. *See* 29 U.S.C. §§ 202, 206, 207; *see also Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960). To enforce the FLSA's workplace protections, Congress chose to rely primarily on "information and complaints received from employees seeking to vindicate rights claimed to have been denied" under the FLSA. *Mitchell,* 361 U.S. at 292. Absent detailed "federal supervision or inspection of [employers'] payrolls," adequate enforcement of the FLSA's workplace protections "could thus only be expected if employees felt free to approach officials with their grievances." *Id.* Accordingly, Congress included an anti-retaliation provision in the FLSA to shield employees who engage in certain protected activities under the FLSA. *See* 29 U.S.C. § 215(a)(3); *Mitchell,* 361 U.S. at 292. The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), provides:

> . . . it shall be unlawful for any [employer] . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related

8

>     to this chapter, or has testified or is
>     about to testify in any such proceeding . .
>     . .

The United States Court of Appeals for the Fourth Circuit has noted that the FLSA's general anti-relation provision is comprised of several discrete clauses. *See Ball v. Memphis Bar-B-Q Company, Inc.*, 228 F.3d 360, 362-63 (4th Cir. 2000). These include the "complaint clause," which proscribes discharge of an employee who "has filed any complaint or instituted . . . any proceeding" related to the FLSA, as well as the "testimony clause," which forbids dismissal of an employee who "has testified or is about to testify in any . . . proceeding" under or related to the FLSA. 29 U.S.C. § 215(a)(3); *Ball,* 228 F.3d at 363.

In this case, the parties argue about the meaning of the complaint clause. *Cf. Ball*, 228 F.3d at 364 (finding that the testimony clause does not apply to protect employees from retaliation for intra-company complaints or potential testimony in future proceedings that have not yet been filed in court). The Fourth Circuit has not ruled explicitly on whether an intra-company complaint or a complaint to a state labor agency, such as DLLR, constitutes a "complaint" under § 215(a)(3). Some district courts in the Fourth Circuit have decided that intra-company complaints are not "complaints" protected under

§ 215(a)(3). *See Minor v. Bostwick Laboratories, Inc.*, 654 F.Supp.2d 433, 438-439 (E.D.Va. 2009); *Cellito v. Semfeld Management, Inc.*, No. No. RDB-06-1794, 2007 WL 1725442, at *4 (D.Md. June 12, 2007); *Boateng v. Terminex Intern. Co. Ltd. Partnership*, No. 07-617, 2007 WL 2562403, 2 (E.D.Va. Sep. 04, 2007). But no court in the Fourth Circuit has decided whether a complaint made only to a state agency satisfies the complaint clause of § 215(a)(3). *But see*, *Kennedy v. Virginia Polytechnic Institute & State University*, No. 7:08cv579, 2009 WL 1321691, at *3 (W.D.Va. May 12, 2009)(finding that a plaintiff's complaints to the Virginia Human Rights Council **and** the Equal Employment Opportunity Commission were protected activities and satisfied the "complaint" requirement of § 215(a)(3) for an Equal Pay Act retaliation claim).

The Seventh Circuit is the only United States court of appeals that has addressed whether a plaintiff's complaint to a state agency is protected activity under § 215(a)(3).[2] In

---

[2] Defendant cites two cases from United States district courts in New York in which the court concluded that the plaintiff's complaint to the New York State Department of Labor was not protected activity "complaints" under § 215(a)(3). *See Caci v. Wiz of Lake Grove, Inc.*, 267 F.Supp.2d 297, 201 (E.D.N.Y. 2003); *Lamont v. Frank Soup Bowl, Inc.*, No. 99 Civ. 12482(JSM), 2001 WL 521815, (S.D.N.Y. May 16, 2001). While *Lamont* explicitly rejects the Seventh Circuit's reasoning in *Sapperstein*, its conclusion that the plaintiff's complaint to the New York State Department of Labor would not qualify was

*Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999), the court ruled that the plaintiff's complaint to the Illinois Department of Labor qualified as protected activity under § 215(a)(3). The court stated:

> [The Plaintiff] filed a complaint or instituted proceedings by reporting to the appropriate authorities conduct which was clearly under or related to the minimum wage and maximum hours laws. There is no reason to doubt his good faith. He was therefore protected from retaliation whether or not the conduct he reported was a violation of those laws.

*Id.* at 857. Furthermore, the court noted that "Section 215(a)(3) does not require that a plaintiff be discriminated against because he reported conduct constituting an actual violation, but only because he 'filed *any* complaint or instituted . . . *any* proceeding *under or related to* this chapter.'" (*Id.* at 856-57)(emphasis in original).

If that interpretation of § 215(a)(3) is correct, Plaintiffs engaged in a protected activity by filing a complaint with DLLR. DLLR's investigation of Plaintiffs' allegations was an administrative proceeding related to Plaintiffs' alleged

---

based on conjecture regarding the Second Circuit's nonexistent position on the issue, given the Second Circuit's narrow interpretation of the anti-retaliation provision. The court's analysis of the issue in *Caci* solely relied on the court's conclusion in *Lamont*. These cases, of course, are not binding precedent for this case.

claims for overtime wages. Plaintiffs did not need to have an actionable claim under other sections of the FLSA in order to state a retaliation claim under § 215(a)(3).

"A plaintiff asserting a *prima facie* claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008)(citations omitted). As noted above, Plaintiffs have properly alleged that they engaged in an activity protected by the FLSA by filing a good-faith complaint with DLLR. (Paper 10 ¶ 27). Plaintiffs filed the complaint because they had the reasonable belief that they had been misclassified as commission-based employees and that they had been inadequately compensated for overtime work that they performed for Defendant. (*Id.*). Plaintiffs allege that they submitted to DLLR information and documentation necessary to demonstrate that ADT was not fully compensating Plaintiffs. (*Id.*). Plaintiffs were terminated one week after they filed a complaint with DLLR. (*Id.* at ¶ 30). Plaintiffs allege that Defendant stated, in Plaintiffs' termination letters, that Plaintiffs were fired because they had "violated

12

company policy that includes confidentiality agreement [sic] that are in our compensation plans for sales representatives, disclosing customers' personal data, and company confidential information to a third party," namely DLLR. (*Id.* at ¶ 38-39). Plaintiffs have asserted facts to allege all three elements of their retaliation claim. Therefore, Defendant's motion to dismiss count I of Plaintiffs' complaint will be denied.

### 2. Maryland Abusive Discharge Claim

It is well established under Maryland law that "at-will employment can be legally terminated at the pleasure of either party at any time." *Makovi v. Sherwin-Williams, Co.*, 316 Md. 603, 609 (1989)(citation and internal marks omitted). The Court of Appeals of Maryland has created a clear exception to this rule, however, in *Adler v. American Standard Corp.*, 291 Md. 31, 39-41 (1981), for abusive (or wrongful) discharge. The tort of abusive discharge occurs when an employer's discharge of an at-will employee "contravenes some clear mandate of public policy." *Id.* at 47.

To state a claim for abusive discharge, an employee must allege: (1) she was discharged, (2) her discharge violated a clear mandate of public policy, and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See King v. Marriott Int'l Inc.*, 160 Md.App. 689, 700

13

(2005). Maryland courts generally have found a "clear mandate of public policy" only where an employee has been discharged for: (1) refusing to violate the law, (2) attempting to exercise a statutory duty, right, or privilege, or (3) performing an important public function. *Makovi*, 316 Md. at 610.

Maryland has clearly recognized as a matter of public policy that workers are entitled to overtime wages in certain circumstances. Md. Code Ann., Lab. & Empl. § 3-415. Furthermore, Maryland "has declared that employees cannot be fired in retaliation for complaining about unfair wage practices." *Cellito v. Semfeld Management*, No. RDB-06-1794, 2007 WL 1725442, *5 (D.Md. June 12, 2007)(citing Md. Code Ann., Lab. & Empl. § 3-428).

> [I]f [a plaintiff] had opposed an unlawful wage practice under Maryland law and been fired as a result, it is possible for her to state a claim for abusive discharge. This is supported by the Maryland Court of Appeals's recognition in *Makovi* that wrongful discharge claims lie where an employee is exercising a statutory right.

*Id.* (citing *Makovi*, 316 Md. at 609).

Even when a statute appears to state a "clear mandate of public policy" that would otherwise constitute an element of the tort, other policy considerations can limit availability of the common law remedy. Because the judicially recognized tort is designed only to vindicate "an otherwise civilly unremedied

public policy violation," a court should not "upset the balance between right and remedy struck by the Legislature in establishing the very policy relied upon" by expanding the civil remedy beyond that approved by the General Assembly. *Makovi*, 316 Md. at 626. Here, the Maryland provision in § 3-428 only provides a criminal penalty for violation for the anti-retaliation provision, a circumstance which can give rise to the tort. For example, in a case cited in *Makovi*, *Ewing v. Koppers Co., Inc.*, 312 Md. 45, 50 (1988), the court observed that:

> Discharging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy. The Legislature has made a strong statement to that effect in making such conduct a criminal offense, and our perception of the magnitude of the public interest in preserving the full benefits of the worker's compensation system to employees, and deterring employers from encroaching upon those rights, is equally strong.

*See also, Wholey v. Sears Roebuck*, 370 Md. 38, 492 (2002).

The absence of a state civil remedy, however, is not the end of the inquiry. In *Chappell v. Southern Maryland Hosp., Inc.*, 320 Md. 483, 496-97 (1990), the Court of Appeals of Maryland determined that the availability of a civil remedy under the FLSA, a federal statute, precluded application of the tort of abusive discharge under Maryland law. According to the *Chappell* court, the tort of abusive discharge is reserved for

15

those situations where the employee otherwise has no civil remedy, under either federal or state law:

> As earlier observed, we said in *Makovi* that "[a]busive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." 316 Md. at 605, 561 A.2d 179. Because Chappell has available to him a civil remedy under both federal and state law, provided he meets his burden of proof, this case is governed by the principles of *Makovi*, which preclude application of a tort remedy to his discharge from employment.

*Chappell*, 320 Md. at 493.[3] Thus, it may be that, if Plaintiffs have a viable cause of action under the FLSA, the tort of abusive discharge would not be available to them.[4] Counts I and II, then, would then be considered alternative theories of recovery.[5]

---

[3] *Chappell* involved purported retaliation for reporting both alleged illegal discrimination and violations of state and federal minimum wage laws.

[4] At some later date, it might become appropriate to certify the question to the Court of Appeals of Maryland pursuant to Md. Code Ann., Cts. & Jud. Proc. § 12-603.

[5] Courts in other jurisdictions have discussed the related issue of whether the FLSA preempts state common law claims. *See, e.g.*, *Morgan v. Future Ford Sales*, 830 F.Supp. 807, 814 (D.Del. 1993)(finding the FLSA anti-retaliation provision preempted a state law claim for an employer's breach of implied covenant of good faith and fair dealing); *Tombrello v. USX Corp.*, 763 F.Supp. 541, 544 (N.D.Ala. 1991)(holding the FLSA preempted a worker's state law claims for wages and invasion of privacy).

Defendant contends, however, that Plaintiffs cannot rely on § 3-428 because they were not attempting to exercise a statutory right. Defendant asserts that the Maryland Wage and Hour Law ("MWHL") explicitly excludes individuals, like Plaintiffs, who are compensated on a commission basis. Defendant concludes, "Since Plaintiffs claim to have been terminated for exercising a legal right which they did not possess, and offer no other basis in the Complaint to support their claim of wrongful discharge, they fail to state a claim for wrongful termination in violation of public policy under Maryland common law." (Paper 9, Attach. 1, at 8).

Plaintiffs counter that their abusive discharge claim should survive because they attempted to exercise their statutory rights under the MWHL by complaining to DLLR about Defendant's unlawful wage practice of not paying overtime. (Paper 13, at 9). Plaintiffs' amended complaint states:

> Plaintiffs had a reasonable, good faith belief that they were misclassified under the FLSA as commissioned employees. Further, Plaintiffs had a reasonable, good faith belief that they were due unpaid overtime from Defendant because that [sic] they had been working significantly more hours per week than forty and had not been compensated with overtime compensation at a rate of time and a half for their proper hourly wage by Defendant.

(Paper 12 ¶ 26).

The MWHL does not, as Defendant points out, cover commissioned employees as stated in Md. Code. Ann., Lab. & Empl. § 3-403(a)(5). Plaintiffs allege, however, that they complained to DLLR with the good-faith belief that they were owed overtime wages as *non-commission* employees who were misclassified as commission-based employees. (Paper 10, at ¶ 26-27). Here, Plaintiffs allege that they were actually non-commission employees, whose pay is protected by the MWHL. Additionally, Plaintiffs allege that Defendant terminated their employment because they exercised their statutory right to complain to DLLR about wage practices covered by the MWHL. Therefore, Plaintiffs have properly alleged that their discharge was a clear violation of public policy. Plaintiffs have alleged the other two elements for a claim of abusive discharge: that they were discharged and that there was a nexus between Plaintiffs' conduct of filing a complaint with DLLR and Defendant's decision to fire Plaintiffs. Therefore, Defendant's motion to dismiss Plaintiffs' Maryland state law claim will be denied.

**III. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be denied. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
