IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON RANDOLPH, et al.                   :

                                          :

     v.                      :   Civil Action No. DKC 09-1790

                                          :

ADT SECURITY SERVICES, INC.               :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case are motions for reconsideration and for certification of an immediate interlocutory appeal filed by Defendant ADT Security Services, Inc. ("ADT"). (ECF Nos. 70, 72). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be denied.

**I.   Background**

**A.   Factual Background**[1]

Plaintiffs Sharon Randolph and Tami Thompson worked at ADT's Lanham, Maryland, office as residential resale

---

[1] The following facts are an abbreviated version of those set forth in the court's earlier memorandum opinion, which granted in part and denied in part the parties' cross-motions for summary judgment. *See Randolph v. ADT Sec. Servs., Inc.*, No. DKC 09-1790, 2011 WL 3476898, at *1-2 (D.Md. Aug. 8, 2011).

representatives, a position in which they sold ADT products and services to individuals. Both Plaintiffs were at-will employees, had to meet weekly sales quotas, and were paid on a commission-only basis. When Randolph and Thompson joined ADT, they received an employee handbook and a "Guide to Ethical Conduct," both of which stressed the private and confidential nature of protected customer information and the company's proprietary business information.

Randolph and Thompson subsequently became dissatisfied with their pay and voiced complaints to various company managers about not receiving promised bonuses for exceeding sales quotas and facing unexpected commission reductions due to customer cancellations. When they did not receive a satisfactory response from ADT regarding these complaints, Plaintiffs contacted the Maryland Department of Labor, Licensing, and Regulation ("DLLR") to discuss their compensation concerns. A DLLR representative sent Randolph and Thompson a blank wage form to complete, and the form expressly requested supporting documentation for their claims, such as employment contracts, wage agreements, commission statements, and invoices. The bottom of the form emphasized the importance of this documentation, stating:

> If your claim pertains to company paid
> benefits (ex: vacation), and/or you worked

> under a written contract, please attach a
> photocopy of all relevant documents. If
> documentation is not available, you must
> attach a complete explanation of the policy
> and/or contract. Please attach any other
> *relevant* documentation which could assist in
> proving your claim.

(ECF No. 48, Ex. J, at ADT 220).

Randolph and Thompson each completed a wage form and submitted copies of their compensation plan, pay stubs, commission statements, company handbooks, company sales reports, and individual residential service contracts with clients. The documents reflect the products and services Plaintiffs sold, the payments they were promised from ADT, the hours they worked, and the payments they actually received. Yet the service contracts also contained personal information about ADT customers, including customer names, addresses, phone numbers, payment information, and, in some cases, alarm passwords and the location of alarm panels. Randolph additionally sent the DLLR copies of PowerPoint slides detailing an ADT "reactivation" program that ADT characterizes as proprietary. Neither Thompson nor Randolph asked for permission from their customers or supervisors before disclosing this information to the DLLR, but they were entitled to maintain the documents for their own records.

The DLLR notified ADT about Plaintiffs' claims shortly after receiving them and sent the company copies of the wage forms and supporting documentation that Randolph and Thompson had submitted. ADT suspended and ultimately terminated both Plaintiffs, ostensibly for violating the company's confidentiality policy by disclosing confidential customer and company information in the documentation that they submitted to DLLR.

**B.   Procedural Background**

Plaintiffs filed a complaint against ADT on July 21, 2009 (ECF No. 1), asserting a retaliation claim under the FLSA and a claim for wrongful termination "under the Maryland public policy exception to at-will employment" (*id.* ¶¶ 39-52). ADT moved to dismiss (ECF No. 6), and asked that the motion be applied to an amended complaint subsequently filed by Randolph and Thompson (ECF No. 9). This motion was denied on March 24, 2010. (ECF Nos. 23, 24).

After discovery was largely completed, ADT moved for summary judgment on October 8, 2010. (ECF No. 48). In response, Plaintiffs cross-moved for partial summary judgment on the issue of liability, while reserving the issue of damages.

(ECF No. 52).[2]   By a memorandum opinion and order issued on August 8, 2011, both motions for summary judgment were granted in part and denied in part.  (ECF Nos. 68, 69).  Specifically, the court granted summary judgment in favor of Plaintiffs on the FLSA retaliation claim, and granted summary judgment in favor of ADT on the wrongful termination claim.  ADT filed a motion for reconsideration on August 14, 2011 (ECF No. 70), and a motion for certification of an interlocutory appeal on September 1, 2011 (ECF No. 72).  Plaintiffs opposed both motions.

## II.  Motion for Reconsideration

ADT moves for reconsideration under Federal Rule of Civil Procedure 59(e) as to Plaintiffs' FLSA retaliation claim, contending that newly discovered evidence "provides strong support" for its position that the confidential information Plaintiffs submitted to the DLLR does not fall within the definition of "complaint" for purposes of 29 U.S.C. § 215(a)(3). As an initial matter, Rule 59(e) does not govern the resolution of this motion because the order granting partial summary judgment in Plaintiffs' favor is an interlocutory order.  *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th

---

[2] In connection with the briefing on the summary judgment motions, both parties submitted motions to seal certain exhibits submitted with their memoranda.  (ECF Nos. 50, 54, 59).  These motions were all granted.  (ECF Nos. 68, 69).

Cir. 2003) (classifying a grant of partial summary judgment as an interlocutory order); *Dilly v. S.S. Kresge*, 606 F.2d 62, 62-63 (4th Cir. 1979) (explaining that the district court's grant of summary judgment only on the issue of liability, while reserving judgment on the issue of damages, constituted an interlocutory order). It is well-established that the appropriate Rule under which to file motions for reconsideration of an interlocutory order is Rule 54(b). *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991).

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). In the United States Court of Appeals for the Fourth Circuit, the precise standard governing a motion for reconsideration of an interlocutory order is unclear. *Fayetteville Investors*, 936 F.2d at 1472. While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, *Am. Canoe Ass'n*, 326 F.3d at 514, courts frequently look to these standards for guidance in considering such motions. *Akeva, LLC v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005).

> Public policy favors an end to litigation
> and recognizes that efficient operation
> requires the avoidance of re-arguing
> questions that have already been decided.
> Most courts have adhered to a fairly narrow
> set of grounds on which to reconsider their
> interlocutory orders and opinions. Courts
> will reconsider an interlocutory order in
> the following situations: (1) there has
> been an intervening change in controlling
> law; (2) there is additional evidence that
> was not previously available; or (3) the
> prior decision was based on clear error or
> would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods., Inc.*, No. PJM-08-409, 2010 WL 3059344, at *1-2 (D.Md. Aug. 4, 2010) (applying this three-part test when evaluating a motion for reconsideration under Rule 54(b)). A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court. *Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

ADT relies on one piece of "newly discovered evidence" as the basis for its motion for reconsideration.[3] This evidence, of which ADT's counsel purportedly was "not aware" until after the issuance of the court's August 8, 2011, order, is a definition

---

[3] In its reply memorandum, ADT asserts – for the first time – that failure to consider this evidence would result in manifest injustice. This argument need not be evaluated directly because, as will be explained below, the outcome of Plaintiffs' retaliation claim would not change even if the court considered this evidence.

of the word "complaint" contained in Chapter 51 of the Department of Labor's Field Operations Handbook ("FOH"). (ECF No. 70-1 at 3 n.1).[4] Paragraph 51a01 of that chapter provides as follows:

> The first priority of the WH enforcement is the prompt servicing of all accepted complaints. (See FOH 52a00.) A complaint is defined as information from a source outside WH that indicates a reasonable probability of a violation of one or more of the laws administered by WH in an identified establishment. If these criteria are not present, a case should not be scheduled as a complaint.

(ECF No. 70-2, at 3).[5] According to ADT, this definition demonstrates that the confidential information Plaintiffs submitted to DLLR was not a "complaint" because that confidential information, when analyzed on an "item by item basis" does not indicate a reasonable probability of a wage law violation. (ECF No. 77, at 5).[6] As a result, ADT contends that

---

[4] In their opposition to ADT's motion for reconsideration, Plaintiffs assert that the FOH has existed for at least sixteen years. (ECF No. 73, at 4). ADT does not contest this assertion.

[5] "WH" appears to refer to the Department of Labor's Wage and Hour Division.

[6] Nowhere does ADT argue that the supporting documentation, as a whole, fails to indicate a reasonable probability of a wage law violation.

Plaintiffs did not engage in protected activity under the FLSA when submitting this information to DLLR.

ADT's reliance on this "newly discovered evidence" is misplaced for two reasons.  First, ADT has not sufficiently demonstrated that the evidence submitted is "newly discovered." A party moving for reconsideration may not rely on new evidence unless it has asserted a valid reason for not presenting the evidence earlier in the litigation.  *Beyond Sys., Inc.*, 2010 WL 3059344, at *2 (explaining that the moving party must establish "a legitimate justification for not presenting the evidence during the earlier proceeding" (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (internal quotation marks omitted))). Here, ADT fails to make this showing.  Initially stating that it was "not aware" of chapter 51 until after the issuance of the court's order (ECF No. 70-1, at 3 n.1), ADT later asserts that its failure to submit this evidence was "due in part" to the fact that Chapter 51 is not discussed in case law or available online (ECF No. 77, at 3).[7]  This explanation does not constitute

---

[7] Another statement in ADT's motion for reconsideration, however, suggests that ADT may not have even undertaken research of non-case-based sources until after the court's August 8, 2011, memorandum opinion and order.  (*See id.* (describing the court's review of "various external sources" – such as statutes and dictionaries – as "*sua sponte*" research)).

a "legitimate justification" for the delay in submission of this evidence because the evidence was attainable before issuance of the court's August 8, 2011, order:   ADT simply did not locate it prior to that time.   *Cf. Semiconductor Energy Lab., Co. v. Samsung Elecs. Co.*, 24 F.Supp.2d 537, 539 n.3 (E.D.Va. 1998) (denying a motion for reconsideration under Rule 59(e) where the new evidence "was either in [the moving party's] possession . . . or was attainable by [that party] prior to trial"), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000); *Valmont Indus., Inc. v. Yuma Mfg. Co.*, 50 F.R.D. 408, 411-12 (D.Colo. 1970) (denying a party's Rule 60(b) motion for reconsideration in a patent infringement suit where the party sought to introduce evidence of a "newly discovered" German patent – in existence since 1920 – that the party's prior patent searches simply had not revealed), *aff'd*, 446 F.2d 1193-94 (10th Cir. 1971).[8]

Assuming, *arguendo*, that the FOH definition of "complaint" did constitute "newly discovered evidence" and persuasive authority in the present case, it would not require the court to reconsider its prior opinion.   ADT asserts that this definition

---

[8] ADT also acknowledges that numerous cases have discussed other portions of the FOH and that the Department of Labor has posted select chapters from the FOH on its website.   This concession further undermines the company's contention that the chapter of the FOH it submits here constitutes "newly discovered evidence."

mandates a decision in its favor because the confidential information submitted by Plaintiffs to DLLR did not establish a reasonable probability of a violation of a wage law. This argument, as explained by ADT, first requires the assumption that supporting documentation be evaluated "on a line by line, item by item basis" (ECF No. 77, at 5), rather than on the whole.[9]

Such an assumption is supported by neither the language of paragraph 51a01 nor the court's August 8, 2011, memorandum opinion. Paragraph 51a01 provides no explicit support for the exceedingly narrow definition of "complaint" proposed by ADT. Indeed, the paragraph actually appears to support a broad construction of the term "complaint," as paragraph 51a01 states that "a *case* should not be scheduled as a 'complaint'" unless it satisfies the criteria articulated by that paragraph. (ECF No. 70-2, at 5) (emphasis added). Additionally, the court's memorandum opinion implicitly rejected the narrow "line by line, item by item" approach that ADT seeks to employ in its motion for reconsideration. (*See, e.g.*, ECF No. 68, at 22 ("The

---

[9] ADT previously presented this argument in reply to Plaintiffs' opposition to its motion for summary judgment and in opposition to Plaintiffs' cross-motion for partial summary judgment. (*See* ECF No. 57, at 7) ("[T]his attempt by the Plaintiffs to excuse their conduct fails when one reviews the highly confidential documents and information in question on a page-specific basis.")).

Supreme Court has indicated that the enforcement needs of the FLSA argue for an interpretation of the word 'complaint' that would provide broad rather than narrow protection to the employee." (internal quotation marks omitted)); *id.* at 26 ("While some of the documents submitted by Plaintiffs contained information characterized by ADT as confidential, those same documents also provided support for Plaintiffs' wage claims.")).

At bottom, ADT's purported reliance on paragraph 51a01 appears merely to be a disguised effort to revisit arguments previously evaluated – and rejected - by the court.     This effort must fail.    *See Gray-Hopkins v. Prince George's Cnty., Md.*, 201 F.Supp.2d 523, 524 (D.Md. 2002) ("A motion to reconsider is not a license to reargue the merits." (brackets omitted)). Accordingly, ADT's motion for reconsideration will be denied.

**III. Motion for Certification of an Interlocutory Appeal**

ADT has also submitted a motion for certification for an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). "[Section] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Section 1292(b) states in pertinent part:

> When a district judge, in making in a civil
> action an order not otherwise appealable

> under this section, shall be of the opinion
> that such order involves a controlling
> question of law as to which there is
> substantial ground for difference of opinion
> and that an immediate appeal from the order
> may materially advance the ultimate
> termination of the litigation, he shall so
> state in writing in such order.

The decision to certify an interlocutory appeal is firmly in the district court's discretion. *Riley v. Dow Corning Corp.*, 876 F.Supp. 728, 731 (M.D.N.C. 1992), *reconsidered on other grounds*, 876 F.Supp. 732 (M.D.N.C. 1992), *aff'd*, 986 F.2d 1414 (4th Cir. 1993) (unpublished opinion).  Indeed, it is axiomatic that the district court should grant this "extraordinary remedy" only in "exceptional circumstances" where early appellate review would avoid a "protracted and expensive litigation" process. *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *2 (4th Cir. 1989) (unpublished opinion); *City of Charleston, S.C. v. Hotels.com, LP*, 586 F.Supp.2d 538, 542, 548 (D.S.C. 2008).  Certification under § 1292(b) is improper simply "to provide early review of difficult rulings in hard cases." *Hotels.com, LP*, 586 F.Supp.2d at 548.

ADT seeks certification of two questions for an interlocutory appeal:  (1) whether a reasonableness requirement applies to the FLSA's "complaint clause," and (2) whether confidential documents constitute a "complaint" – and thus protected activity – under the FLSA.  The Fourth Circuit has

long defined the phrase "controlling question of law" strictly, explaining that this term applies only to a "narrow question of pure law whose resolution would be *completely* dispositive of the litigation, either as a legal or practical matter." *Fannin*, 873 F.2d 1438, at *5 (emphasis added). Even where the question presented is a legal one, if resolution of that issue is rooted in the facts of a particular case, the question is not proper for interlocutory review. *Id.* (expressing reluctance to evaluate legal questions "heavily freighted with the necessity for factual assessment" on interlocutory appeal).

ADT's first question simply fails to satisfy this strict standard. ADT initially contends that the reasonableness requirement question would encompass a determination of whether Plaintiffs had acted reasonably in submitting the confidential documents to DLLR. (ECF No. 72-1, at 3). This issue, however, would require the Fourth Circuit to resolve not only the legal question regarding the applicability of a reasonableness requirement, but also the factually intensive question of whether Plaintiffs did act reasonably. Such factual questions are precisely the type that appellate courts are "unaccustomed and illsuited" to resolve on interlocutory appeal. *Fannin*, 873 F.2d 1438, at *5. Perhaps recognizing this weakness in its argument, ADT suggests in a footnote to its reply memorandum

14

that the Fourth Circuit "could examine the purely legal question of whether the reasonableness test applies" and then remand to the district court for a determination of whether the conduct is reasonable. (ECF No. 78, at 2 n.1).  Even reframing the first question in this way fails to raise a controlling question of law because resolution of that issue would not dispose of the litigation.    Indeed, even if the Fourth Circuit found a reasonableness requirement applicable to the present case, this court would still need to determine whether Plaintiffs acted reasonably – an issue hotly disputed by both parties.  For this reason, the first question presented by ADT fails to qualify as a controlling question of law and thus will not be certified for interlocutory appeal.  *See DiFelice v. U.S. Airways, Inc.*, 404 F.Supp.2d 907, 909 (E.D.Va. 2005) (declining to certify a question regarding the applicability of a statutory defense under ERISA because, even if the Fourth Circuit found the defense applicable, the district court would then have to reach the merits of the defense before the litigation could end).

ADT's second question – whether the confidential documents submitted by Plaintiffs constitute a complaint – would likely constitute a controlling question of law because the question is legal in nature and a resolution in ADT's favor would be completely dispositive of the present litigation.    This

15

question, however, is nonetheless improper for certification because there is not a substantial ground for difference of opinion.

An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue. *McDaniel v. Mehfoud*, 708 F.Supp. 754, 756 (E.D.Va. 1989), *appeal dismissed*, 927 F.2d 596 (4th Cir. 1991) (unpublished opinion). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor v. BOT Fin. Corp.* (In re *Flor*), 79 F.3d 281, 284 (2[d] Cir. 1996). ADT spends little time in its certification motion addressing this issue as it relates to the second question. In fact, its entire argument rests on repetition of a single phrase from the court's August 8, 2011, memorandum opinion, which noted "[t]he parties have not identified, and the court is not aware of, any case law explaining whether documents attached to a formal agency document fall within the scope of an FLSA 'complaint.'" (ECF No. 72-1, at 4 (quoting ECF No. 68, at 18-19)). This statement - along with a handful of cases previously cited by ADT but distinguished by the court - are simply not enough to demonstrate that a substantial ground for difference of opinion exists as to the second question. *See*

*David v. Alphin*, No. 3:07-cv-11-RJC-DLH, 2009 WL 3633889, at *4 (W.D.N.C. Oct. 30, 2009) (finding that no substantial ground for difference of opinion existed where a party had cited only one dissenting opinion and two amicus briefs – but no controlling precedent – to support its position). Accordingly, § 1292(b) certification of ADT's second question is improper.[10]

## IV.  Conclusion

For the foregoing reasons, the motions for reconsideration and for certification of an interlocutory appeal filed by ADT will be denied.  A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[10] Additionally, ADT has not shown that certification would *materially* advance the litigation in this case.  Certification of an interlocutory appeal is only appropriate "where significant effort and expense would be spared by appellate review prior to the entry of final judgment." *Hotels.com, LP*, 586 F.Supp.2d at 542 (citing *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y. 1982)).  The only remaining issue in this case, however, is the determination of damages for Plaintiffs' FLSA claim, an issue unlikely to generate the "protracted and expensive litigation" that interlocutory appeal seeks to avoid.  *Regan*, 552 F.Supp. at 366.